UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID PFEFFER,
Plaintiff,

vs.

NATIONAL CREDIT SYSTEMS, INC.,
Defendant.

Case No. 1:16-cv-6
Dlott, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff David Pfeffer brings this action against defendant National Credit Systems, Inc. under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 *et seq.*; and the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362. This matter is before the Court on defendant's motion for summary judgment (Doc. 27) and brief in support (Doc. 28), plaintiff's response in opposition (Doc. 32), defendant's reply memorandum (Doc. 35), plaintiff's sur-reply (Doc. 40), plaintiff's supplemental memorandum (Doc. 45), and defendant's supplemental memorandum (Doc. 46).

**I. Defendant's argument that plaintiff failed to comply with the Court's standing order is not well-taken.**

Defendant attached to its motion for summary judgment a statement of proposed undisputed facts, which it stated was filed "[p]ursuant to this Court's standing order." (Doc. 28-1 at 1). Plaintiff attached to his response in opposition an objection and response to the proposed undisputed facts. (Doc. 32-1). As to each proposed undisputed fact, plaintiff responded "admit," "object," or "object/deny." (*See generally id.*). Plaintiff did not cite to any evidence to support his denials. (*See generally id.*).

Defendant argues that summary judgment should be granted in its favor because plaintiff's response to defendant's proposed undisputed facts does not comply with the district judge's standing order, which requires plaintiff to support his denials with citations to admissible evidence. (*See* Doc. 35 at 2-3). However, this case has been referred to the undersigned "to deal with all pretrial and post-judgment motions and procedures, whether dispositive or not, and to render a report and recommendation to the Court on any matters classified as dispositive by statute." (Doc. 26 at 1). The undersigned's standing order does not require a movant to attach a statement of proposed undisputed facts to a motion for summary judgment and does not require a non-movant to file a response to a statement of proposed undisputed facts or to identify admissible evidence to support denials of proposed undisputed facts in such a response if filed. Therefore, the undersigned will consider only whether plaintiff has identified admissible evidence in his briefing to rebut defendant's evidence that the facts are undisputed. Accordingly, defendant's argument that plaintiff failed to comply with the Court's standing order is not well-taken and does not constitute grounds for granting the motion for summary judgment.

## II. Facts

On March 8, 2013, plaintiff began a six-month lease with Fiesta Village Apartments that was scheduled to expire on September 7, 2013. (*See* Move-Out Statement, Exh. A to Declaration of Ron Sapp, Doc. 28-3 at 2). On May 1, 2013, plaintiff filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the District of Arizona. (*See In re Pfeffer*, Chapter 7 Voluntary Petition, CM/ECF for D. Ariz. Bankr. Ct., Case No. 2:13-bk-7309, Doc. 1). Schedule G of plaintiff's bankruptcy petition listed the lease with Fiesta Village as an unexpired lease that would expire in August 2013. (*Id.* at 21). On July 30, 2013, plaintiff filed an amended

statement of intention in the bankruptcy case in which he indicated that he would not be assuming his lease with Fiesta Village. (*Id.*, Amended Statement of Intention, Doc. 19).

On August 2, 2013, plaintiff moved out of his apartment at Fiesta Village. (*See* Move-Out Statement, Doc. 28-3 at 2). On August 7, 2013, Fiesta Village generated a Move-Out Statement. (*Id.*). This statement indicated that plaintiff owed Fiesta Village $1,997.61, which represented two days of unpaid rent and associated fees for August, a $500.00 concession at move-out, $500.00 for damages and cleaning, and a $919.00 penalty for not providing sufficient notice before vacating the apartment. (*Id.*). On August 12, 2013, plaintiff was discharged from bankruptcy. (*See* Discharge of Debtor, CM/ECF for D. Ariz. Bankr. Ct., Case No. 2:13-bk-7309, Doc. 20).

On November 18, 2013, Fiesta Village referred plaintiff's account to defendant with a balance owed in the amount of $2,796.66. (Declaration of Ron Sapp, Doc. 28-2 at ¶ 25). After plaintiff learned that this debt was being listed on his credit reports, he disputed the debt with credit reporting agencies Equifax and TransUnion. Specifically, on May 11, 2015, plaintiff sent letters to Equifax and TransUnion in which he stated: "This [debt] was included in my Bankruptcy and I have documentation to prove this!" (Exhs. C and G to Plaintiff's Declaration, Docs. 32-5 and 32-9). On June 2, 2015, plaintiff sent a second letter to Equifax in which he stated: "I have enclosed the amended bankruptcy paperwork that include[s] Fiesta Village. Please see attached and either correct to reflect current status or delete from my file." (Exh. D to Plaintiff's Declaration, Doc. 32-6). On July 8, 2015, plaintiff sent a third letter to Equifax in which he stated: "This [debt] has been amended and resolved and the balance should be zero! I do not owe anything on this account." (Exh. E to Plaintiff's Declaration, Doc. 32-7). On November 18, 2015, plaintiff's counsel sent defendant a letter that defendant had violated the

3

FCRA by failing to accurately report the Fiesta Village debt to credit reporting agencies despite plaintiff's previous disputes about the debt, "particularly due to his bankruptcy filing (see enclosed)." (Exh. I to Plaintiff's Declaration, Doc. 32-11). On November 24, 2015, defendant responded to plaintiff's counsel that it was enclosing copies of the documentation on file related to plaintiff's account and directing counsel to have plaintiff remit payment to defendant. (Exh. J to Plaintiff's Declaration, Doc. 32-12).

Ron Sapp, defendant's vice president of operations, attests that defendant determines which type of investigation into an account dispute to perform based on the dispute code it receives from a credit reporting agency. (*See* Sapp Declaration, Doc. 28-2 at ¶ 21). If defendant receives a notice from the credit reporting agency with a dispute code of "6," which indicates that the consumer "is not aware of the collection," defendant conducts an investigation "to determine if the debt is correctly associated with the consumer." (*Id.* at ¶ 22). If defendant receives a notice with a dispute code of "109," which indicates that "the consumer disputes the balance reported on the account," defendant conducts an investigation "to determine if the account balance is accurately reported." (*Id.* at ¶ 24). If defendant receives a notice with a dispute code of "37," which indicates that "the dispute involves an account which the debtor claims was included in a bankruptcy," the defendant "review[s] account information provided by the consumer, the [credit reporting agencies] and [defendant's] clients to determine if the debt in question arose prior to or after the bankruptcy petition was filed." (*Id.* at ¶ 23).

Mr. Sapp attests that defendant received six different notices from credit reporting agencies concerning disputes related to plaintiff's account. (*Id.* at ¶¶ 33-36, 39). Specifically, defendant received notices with dispute code 6 on July 28 and November 24, 2014, with dispute code 37 on April 6, May 26, and June 15, 2015, and with dispute code 109 on July 20, 2015.

4

(*Id.*). Mr. Sapp attests that each time defendant received a notice with dispute code 37, defendant's employees "reviewed account information provided by the consumer, the [credit reporting agencies] and [defendant's] clients and determined that [the] debt in question arose after the bankruptcy petition was filed." (*Id.* at ¶¶ 35-36). Mr. Sapp attests that as part of these investigations, defendant's "employees located Plaintiff's name in PACER and determined that Plaintiff filed case number 2:13-bk-07309 in the Bankruptcy Court for the District of Arizona on May 1, 2013 which was discharged from bankruptcy on August 12, 2013." (*Id.* at ¶ 37). Mr. Sapp further attested that as part of these investigations, defendant's "employees reviewed the move out statement . . . to determine if the debt arose prior to Plaintiff's bankruptcy petition. Using the dates provided on the move out statement, [defendant's] employees determined that the debt arose on or about August 2, 2013, after Plaintiff filed his petition." (*Id.* at ¶ 38). Mr. Sapp attests that defendant's investigation procedures "are specifically designed to ensure that [defendant] furnishes accurate information to [credit reporting agencies]" and any inaccuracy in reporting plaintiff's debt to consumer reporting agencies "was the result of a bona fide error notwithstanding [defendant's] policies and procedures in place to prevent such errors." (*Id.* at ¶¶ 41, 43). Mr. Sapp attests that after it received correspondence from plaintiff's counsel on November 24, 2015, it placed plaintiff's account on hold and subsequently closed it. (*Id.* at ¶ 40).

### III. Summary judgment standard

Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir.

5

2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. Resolution

### A. FCRA

Furnishers of consumer information such as defendant "have a duty to provide [consumer reporting agencies] with accurate information about their consumers." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (citing 15 U.S.C. § 1681s-2(a)). If a furnisher receives notice from a consumer reporting agency of a dispute regarding the accuracy of consumer information, the furnisher must "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). After this investigation, if the furnisher finds the consumer information is "inaccurate or incomplete or cannot be verified . . . , for purposes of reporting to a consumer reporting agency only," the furnisher must modify, delete, or

6

permanently block the reporting of that item of information. 15 U.S.C. § 1681s-2(b)(1)(E). A furnisher's investigation of a dispute regarding the accuracy of consumer information "must be a reasonable one." *Boggio*, 696 F.3d at 616 (citations omitted). Where a furnisher receives notice of the specific nature of the underlying dispute, "a reasonable investigation . . . would require that [the furnisher] review the relevant, underlying documentation." *Id.* at 619.

If a furnisher is negligent in failing to comply with these requirements, a consumer may "bring suit to recover actual damages, and potentially attorney's fees and costs." *Id.* at 615 (citing 15 U.S.C. § 1681*o*). If a furnisher willfully fails to comply with these requirements, a consumer "may seek actual *or* statutory damages, as well as punitive damages and attorney's fees and costs." *Id.* (citing 15 U.S.C. § 1681n). To willfully violate the FCRA, a furnisher's actions "must entail 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 610 (6th Cir. 2016) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)).

Here, defendant has submitted evidence that it investigated plaintiff's disputes that the debt was discharged in bankruptcy pursuant to the policies and procedures that defendant had implemented for such investigations. (*See* Sapp Declaration, Doc. 28-2 at ¶¶ 23, 35-38). Plaintiff has submitted evidence of three letters he sent in May and June 2015 to consumer reporting agencies in which he disputed the debt at issue as having been discharged in bankruptcy. (Exhs. C, D, and G to Plaintiff's Declaration, Docs. 32-5, 32-6, and 32-9). Further, plaintiff has submitted a November 18, 2015 letter from his attorney to defendant that again informed defendant that it was inaccurately reporting plaintiff's debt in light of plaintiff's bankruptcy filing. (Exh. I to Plaintiff's Declaration, Doc. 32-11). Thus, even though defendant was informed on four separate occasions that plaintiff's debt may be inaccurate due to his

bankruptcy filing, defendant continued its attempts to collect the debt as late as November 24, 2015. (*See* Exh. J to Plaintiff's Declaration, Doc. 32-12). Plaintiff's evidence is sufficient to establish a genuine issue of fact as to whether defendant conducted a reasonable investigation.

The mere existence of defendant's standard policies for investigating whether a debt was discharged in bankruptcy "does not resolve the inquiry into the reasonableness of its investigation." *Boggio*, 696 F.3d at 619. Because defendant received notice regarding the specific nature of plaintiff's dispute—that the debt had been discharged in bankruptcy— defendant was required to review the relevant underlying documentation to resolve this question. Under the bankruptcy code, a bankruptcy trustee may assume or reject any unexpired lease of the debtor. 11 U.S.C. § 365(a). If the trustee does not assume or reject an unexpired lease within 60 days after the petition is filed, then the unexpired lease is deemed rejected. *In re Miller*, 282 F.3d 874, 876-77 (6th Cir. 2002) (quoting 11 U.S.C. § 365(d)(1)). A rejection "is treated as a breach of the lease that took place immediately prior to the filing of the bankruptcy petition." *Id.* at 877 (citing 11 U.S.C. § 365(g)(1); *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997)). "[T]he situation that results from a breach of a lease due to rejection of it under § 365 is that the lessor becomes an unsecured creditor with a pre-petition claim for damages." *Id.* A lessor "is entitled to damages for that breach, even damages arising after the rejection of the lease, but those damages are considered a pre-petition claim." *Id.* at 878 (quoting *Chateau Cmtys., Inc. v. Miller*, 252 B.R. 121, 124 (E.D. Mich. 2000)). Discharge from bankruptcy "discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case[.]" 11 U.S.C. § 727(b).

Here, plaintiff filed for bankruptcy on May 1, 2013, and the trustee did not assume or reject the Fiesta Village lease within 60 days. (*See In re Pfeffer*, Docket Sheet, CM/ECF for D. Ariz. Bankr. Ct., Case No. 2:13-bk-7309). Thus, the lease was deemed rejected effective June 30, 2013, sixty days after plaintiff filed his petition for bankruptcy. *See Miller*, 282 F.3d at 876-77; 11 U.S.C. § 365(d)(1). This rejection "is treated as a breach of the lease that took place immediately prior to the filing of the bankruptcy petition" such that Fiesta Village became "an unsecured creditor with a pre-petition claim for damages." *Miller*, 282 F.3d at 877. Fiesta Village's damages claim for breach of contract was discharged in bankruptcy and Fiesta Village could not thereafter collect any unpaid rent or associated charges related to plaintiff's early termination of the lease. *See id.* at 878; 11 U.S.C. § 727(b). Thus, because the debt at issue was discharged in plaintiff's bankruptcy, defendant's reporting of that debt to credit reporting agencies was improper.

A reasonable jury could find that defendant was negligent in continuing to report the debt after plaintiff on at least four separate occasions put defendant on notice that plaintiff had filed bankruptcy and the debt had been discharged. (Exhs. C, D, G, and I to Plaintiff's Declaration, Docs. 32-5, 32-6, 32-9, and 32-11). A reasonable jury could find that an entity such as defendant, which is in the business of collecting debts, would or should have enough familiarity with bankruptcy law to ascertain after a reasonable investigation that plaintiff's debt to Fiesta Village was discharged under the circumstances of this case. Plaintiff has presented sufficient evidence showing a genuine dispute as to whether defendant conducted a reasonable investigation such that it should have discovered that the debt at issue had been discharged by plaintiff's bankruptcy.

This, however, is not the end of the summary judgment inquiry concerning a negligent violation of the FCRA. To prevail on an FCRA claim under a negligence theory, a plaintiff must prove actual damages. *Boggio*, 696 F.3d at 615. Here, plaintiff has submitted his declaration in which he attests: "It is my understanding from what Paul Luck of McKinley Mortgage indicated to me, that the listing of the Fiesta Village Apartment debt was preventing me from obtaining a home loan." (Plaintiff's Declaration, Doc. 32-2 at ¶ 8). Plaintiff further attests that "[a]s a result of the reporting error by Fiesta Village, I have had no success in obtaining a home loan and have had to pay higher interest rates on other loans." (*Id.* at ¶ 21). Plaintiff also attests that "[t]he inability to obtain a home loan, in addition to causing financial stress, has caused me emotional distress as well." (*Id.* at ¶ 22). In sum, plaintiff has submitted his declaration as evidence of three types of actual damages: (1) the denial of a home loan; (2) higher interest rates on other loans; and (3) emotional distress.

As to plaintiff's assertion that he has had to pay higher interest rates on loans, this is insufficient to establish a genuine issue of material fact at the summary judgment phase. Plaintiff has not produced any evidence of loans on which he has had to pay higher interest rates, and more importantly he has not produced any evidence of a causal link between defendant's actions and the alleged higher interest rates. *See Garrett v. Trans Union, LLC*, No. 2:04-cv-582, 2006 WL 2850499, at *11 (S.D. Ohio Sept. 29, 2006) ("[W]ithout a causal relationship between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'") (quoting *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001)). Instead, he has submitted only the statement in his declaration that defendant's reporting error has caused him "to pay higher interest rates on other loans." (Plaintiff's Declaration, Doc. 32-2 at ¶ 21). The Court finds that this statement is "nothing more than . . . [a] conclusory

10

allegation[] and subjective belief[] which [is] wholly insufficient evidence to establish" actual damages on summary judgment. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (citations omitted). *Cf. Royster v. Pac. Creditors Ass'n*, No. 3:08-cv-9, 2008 WL 4693411, at *2, *4 (S.D. Ohio Oct. 23, 2008) (finding actual damages where a plaintiff produced evidence that she was able to obtain a loan only "at an interest rate (8.75%) well above the interest rate (6.25%) she would have been eligible for if [defendant] had removed its derogatory remark").

Plaintiff's declaration also states that "Paul Luck of McKinley Mortgage indicated to me, that the listing of the Fiesta Village Apartment debt was preventing me from obtaining a home loan." (Plaintiff's Declaration, Doc. 32-2 at ¶ 8). As this Court has recognized, "the 'loss of opportunity in the home mortgage market' is a viable basis for actual damages." *Kehren v. JPMorgan Chase Bank*, No. 2:16-cv-133, 2017 WL 373513, at *3 (S.D. Ohio Jan. 26, 2017) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 240 (4th Cir. 2009)). Nevertheless, defendant argues that plaintiff's declaration statement fails to establish a genuine issue of material fact concerning actual damages related to the denial of a home loan because it is based on a hearsay statement made by Mr. Luck. (Doc. 46 at 6). Defendant is correct.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A court cannot rely on unsworn inadmissible hearsay when ruling on a motion for summary judgment. *Hoover v. Walsh*, 682 F.3d 481, 491 n.34 (6th Cir. 2012). "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid.

801(c). Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802.

Here, plaintiff is offering Mr. Luck's hearsay statement to prove the truth of the matter asserted, i.e., that plaintiff was denied a home loan because of defendant's reporting of the Fiesta Village debt. However, the Court cannot rely on the unsworn, inadmissible hearsay statement of Mr. Luck as proof of this matter when ruling on a motion for summary judgment. *See Hoover*, 682 F.3d at 491 n.34. Plaintiff has failed to provide the Court with any other, admissible evidence to suggest that he was denied a home loan because of defendant's actions.

This leaves plaintiff's statement in his declaration that the "inability to obtain a home loan . . . has caused me emotional distress." (Plaintiff's Declaration, Doc. 32-2 at ¶ 22). Plaintiff has not produced any evidence that "reasonably and sufficiently explains the circumstances surrounding" the purported emotional injury. *See Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 361 (6th Cir. 2005) ("An injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements."); *Garrett*, 2006 WL 2850499, at *11 ("When the plaintiff's testimony is the only proof of emotional damages, he or she must explain the circumstances of the injury in reasonable detail and cannot simply rely on conclusory statements."); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (same). Therefore, plaintiff has failed to offer evidence upon which a jury could conclude that the inaccuracy on his credit reports proximately caused him emotional distress.

In sum, plaintiff has not established a genuine issue of material fact concerning the existence of actual damages. Accordingly, plaintiff cannot overcome defendant's motion for summary judgment as to his FCRA claim on a theory of negligence.

Thus, to survive summary judgment as to his FCRA claim, plaintiff must establish a genuine issue of material fact from which a jury reasonably could find that defendant's violation of the FCRA was not only negligent, but also willful. The Supreme Court has explained that a willful violation of the FCRA can be established if a furnisher is either knowingly or recklessly noncompliant with its FCRA duties. *See Safeco Ins. Co. of Am.*, 551 U.S. at 56-60. "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. The Supreme Court found that the company's actions were not reckless in that case because the company's "reading of the statute, albeit erroneous, was not objectively unreasonable" and no courts "had spoken on the issue." *Id.* at 70. "In the FCRA, 'whether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question.'" *Meyerl v. Carrington Mortg. Co.*, No. 16-cv-27, 2016 WL 8794477, at *2 (W.D. Pa. Dec. 7, 2016) (quoting *Dixon-Rollins v. Experian Info. Sols., Inc.*, 753 F. Supp.2d 452, 462 (E.D. Pa. 2010)).

Here, in contrast, defendant's interpretation of bankruptcy law was "objectively unreasonable" in its determination that plaintiff's debt was post-petition. As already explained above, a review of plaintiff's bankruptcy case shows that plaintiff's lease was deemed rejected and, thus, the Fiesta Village debt was discharged in bankruptcy. *See Miller*, 282 F.3d at 876-78; 11 U.S.C. §§ 365(d)(1) and 727(b). Defendant was informed on at least four occasions that plaintiff was disputing the debt as having been discharged in bankruptcy. (*See* Exhs. C, D, G, and I to Plaintiff's Declaration, Docs. 32-5, 32-6, 32-9, and 32-11). A reasonable jury could find that defendant is a sophisticated debt collector that regularly attempts to collect debts from

13

consumers in difficult financial circumstances, including bankruptcy. As such, a reasonable jury could find that despite numerous investigations and the submission by plaintiff of documentation from his bankruptcy case, defendant's continued failure to acknowledge a central tenet of bankruptcy law—i.e., that the debt associated with an unexpired lease that has not been assumed is included in a discharge from bankruptcy—was reckless.

Accordingly, because a reasonable jury could find that defendant's violation of the FCRA was reckless on the evidence before the Court, the motion for summary judgment should be denied as to plaintiff's FCRA claim.[1]

### B. FDCPA/OCSPA

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A debt collector violates the FDCPA if it falsely represents "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). "Communicating or threatening to communicate to any person credit information which is known or should be known to be false" also violates the FDCPA. 15 U.S.C. § 1692e(8).

The OCSPA prohibits committing "an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). The OCSPA also prohibits committing "an unconscionable act or practice in connection with a consumer transaction." *Id.* § 1345.03(A).

---

[1] In its supplemental memorandum, defendant argues that plaintiff's FCRA claim fails as a matter of law because the credit dispute letters in plaintiff's name were sent by Joe Frey of Credit Solutions. (*See* Doc. 46 at 2-3; Joe Frey Deposition Excerpts, Exh. A to Defendant's Supplemental Memorandum, Doc. 47-1). Defendant argues that under 15 U.S.C. § 1681i(a)(1), the requirement to investigate a credit dispute is triggered only if "the consumer notifies the agency directly, or indirectly through a reseller." 15 U.S.C. § 1681i(a)(1); (*see* Doc. 46 at 2). Defendant argues that Mr. Frey's sending credit dispute letters in plaintiff's name and on his behalf does not meets these requirements. (*See* Doc. 46 at 2-3). Defendant has not provided the Court with any binding authority to support its contention that a consumer such as plaintiff cannot utilize an agent such as Mr. Frey to draft and send dispute letters on his behalf. Accordingly, the Court should decline to grant summary judgment on this ground.

"The FDCPA provides a bona fide error defense that shields a debt collector from liability for violating the FDCPA in certain instances." *Durthaler v. Accounts Receivable Mgmt., Inc.*, 854 F. Supp.2d 485, 493 (S.D. Ohio 2012). This defense provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Thus, to avoid FDCPA liability through this defense, a defendant must establish that: "(1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Durthaler*, 854 F. Supp.2d at 493 (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476-77 (6th Cir. 2008)). The OCSPA "contains the same 'bona fide error' defense that is contained in the FDCPA." *Hartman v. Asset Acceptance Corp.*, 467 F. Supp.2d 769, 780 (S.D. Ohio 2004) (citing Ohio Rev. Code § 1345.11(A)).

Here, to prevail on its bona fide error defense, defendant must establish each prong of the defense by a preponderance of the evidence. *See Durthaler*, 854 F. Supp.2d at 493; 15 U.S.C. § 1692k(c). However, as already explained above in the Court's analysis of the FCRA claim, a reasonable jury could find that defendant's procedures were not "reasonably adapted to avoid" the error at issue here. That is, there remains a genuine issue of material fact as to whether defendant's procedures were reasonably adapted to avoid the error at issue when despite those procedures, defendant failed to identify and correct the error on at least four occasions. (*See* Exhs. C, D, G, I, and J to Plaintiff's Declaration, Docs. 32-5, 32-6, 32-9, 32-11, and 32-12). Thus, because a genuine issue of fact remains concerning the reasonableness of defendant's procedures, summary judgment should be denied as to plaintiff's FDCPA and OCSPA claims.

## C. Violation of the bankruptcy stay

Filing a petition for bankruptcy stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). In a bankruptcy filed under Chapter 7, the stay continues until the earliest of the time the case is closed, dismissed, or a discharge is granted or denied. 11 U.S.C. § 362(c)(2).

Here, plaintiff was discharged from bankruptcy on August 12, 2013, but defendant took no action to collect a debt from plaintiff until after Fiesta Village referred plaintiff's account to defendant on November 18, 2013. (*See* Discharge of Debtor, CM/ECF for D. Ariz. Bankr. Ct., Case No. 2:13-bk-7309, Doc. 20; Sapp Declaration, Doc. 28-2 at ¶ 25). Thus, defendant did not violate the bankruptcy stay because the bankruptcy stay was lifted before defendant attempted to collect on the Fiesta Village debt. *See* 11 U.S.C. § 362(c)(2).

Even if plaintiff had properly pled a violation of the discharge injunction instead of the bankruptcy stay, he could not prevail. The bankruptcy code provides that a discharge from bankruptcy "operates as an injunction against the commencement or continuation of an . . . act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(2). However, plaintiff cannot recover damages in this Court based on a violation of the discharge injunction because "there is no private right of action under 11 U.S.C. § 524." *Kehren*, 2017 WL 373513, at *4 (citing *Pertuso v. Ford Motor Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000)). Instead, the proper forum to remedy a violation of the discharge injunction is to bring a contempt action in the bankruptcy court. *See id.* at *3; *Pertuso*, 233 F.3d at 421 ("[T]he traditional remedy for violation of an injunction lies in contempt proceedings, not in a lawsuit such as this one.").

16

Accordingly, the motion for summary judgment should be granted as to plaintiff's claim that defendant violated the bankruptcy stay.

IV. Conclusion

Based on the foregoing, it is **RECOMMENDED** that defendant's motion for summary judgment (Doc. 27) be **GRANTED** as to plaintiff's claim that defendant violated the bankruptcy stay, but **DENIED** as to plaintiff's claims under the FCRA, the FDCPA, and the OCSPA.

**IT IS SO RECOMMENDED.**

Date: 8/18/17

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DAVID PFEFFER,
Plaintiff,

vs.

NATIONAL CREDIT SYSTEMS, INC.,
Defendant.

Case No: 1:16-cv-6
Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).